NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ALAN C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.C., A.C., *Appellees*.

No. 1 CA-JV 17-0476
FILED 5-31-2018

Appeal from the Superior Court in Maricopa County
No. JD32428
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1**        Alan C. ("Father") appeals the superior court's order terminating his parental rights to his two children. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Father and Lori C. ("Mother") are the biological parents of K.C., born in November 2012, and A.C., born in November 2013 (the "Children").[1] The Department of Child Safety ("DCS") placed the Children in its temporary physical custody on January 4, 2016, after Mother and Father were arrested for Father having shot a firearm from his vehicle at another vehicle traveling on I-40. Father stated he believed the passengers in the other vehicle were involved in sexual trafficking of children, and were attempting to take his children. Father was a prohibited possessor of a firearm at the time, and was impaired by alcohol. K.C. and A.C. were traveling in the car with Mother and Father, along with two of Mother's minor brothers. Contrary to Father's belief, the other vehicle carried a vacationing family of four, including two children. Mother and Father were charged with four counts of aggravated assault, drive-by shooting, four counts of felony endangerment, and criminal damage. Soon after his arrest, Father was extradited to Virginia for a probation violation and sentenced to serve a two-year sentence for kidnapping and abduction, with the Arizona charges still pending.

---

[1]        Mother's parental rights to the Children were severed, and she is not a party to this appeal.

**¶3**        The Children were found dependent by May 2016. They were placed in maternal great-grandmother's care by November 2016.[2]

**¶4**        In February 2017, DCS moved to sever Father's parental rights to both Children based on willful abuse, mental illness, a history of chronic abuse of dangerous drugs, length of incarceration for felony conviction, and out-of-home placement for nine months and fifteen months or longer. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (3), (4), (8)(a), (8)(c). At a severance hearing in August 2017, Dr. James Thal, a psychologist, testified he diagnosed Father with a rule-out antisocial personality disorder and a rule-out delusional disorder, both placing the Children at risk of harm if they were returned to Father's care. A DCS case worker testified Father never participated in individual counseling, as recommended, and never mitigated DCS's concerns leading to the Children's removal from his care.

**¶5**        After the severance hearing, the superior court terminated Father's parental rights to both Children. Other than the willful abuse allegation, the court found DCS proved by clear and convincing evidence the alleged statutory grounds for termination, and that severance was in the Children's best interests by a preponderance of the evidence. Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

---

[2]        In its initial severance order, the superior court stated the Children were placed with their paternal grandparents. The court later issued a *nunc pro tunc* order correcting a clerical error and finding the Children were placed with their maternal great-grandmother. No substantive changes were made to the initial order. *See Judgment*, Black's Law Dictionary (10th ed. 2014) (a *nunc pro tunc* order or judgment is "a procedural device by which the record of a judgment is amended to accord with what the judge actually said and did, so that the record will be accurate"); *see also Valley Nat. Bank of Ariz. v. Meneghin*, 130 Ariz. 119, 124 (1981) ("A judgment nunc pro tunc is by its very nature retroactive.").

**DISCUSSION**

**¶6** The right to custody of one's child is fundamental, but not absolute. *Michael J. v. ADES*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). Arizona statutes require the superior court to make two findings before ordering severance of parental rights. *Kent K. v. Bobby M.*, 210 Ariz. 279, 280, ¶ 1 (2005); *see also* A.R.S. § 8-533(B). First, the court must find at least one statutory ground warranting severance by clear and convincing evidence. A.R.S. § 8-537(B); *Crystal E. v. DCS*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Then, the court must determine by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests. *Shawanee S. v. ADES*, 234 Ariz. 174, 176–77, ¶ 9 (App. 2014). We review a court's severance determination for an abuse of discretion. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we view the facts in the light most favorable to affirming the superior court's order "unless no reasonable evidence supports those findings," *Jennifer B. v. ADES*, 189 Ariz. 553, 555 (App. 1997).

**¶7** On appeal, Father has not challenged four of the five statutory grounds supporting the court's termination of his parental rights or the court's findings of fact supporting those grounds. He thus has conceded the validity of the findings and waived any argument on appeal. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960) (by failing to challenge the accuracy of findings, a party concedes the accuracy on appeal); *Crystal E.*, 241 Ariz. at 578, ¶ 6 (issues not raised in an opening brief are waived).

I.    **The Termination of Father's Parental Rights Is in the Children's Best Interests.**

**¶8** Father argues the court's best-interests finding was not supported by, or was contrary to, the evidence in the record because (1) DCS failed to place the Children together at all times; (2) the court order directed the adoption plan toward paternal grandparents, not maternal great-grandmother; (3) the court failed to make findings regarding the actual adoption plan with maternal great-grandmother; (4) Father had a strong bond with the Children prior to dependency and participated in

visitations with great success; and (5) evidence did not establish Father would remain incarcerated for a substantial period of time.[3]

**¶9**     Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). The superior court must consider the totality of the circumstances when making a best-interests finding. *Dominique M. v. DCS*, 240 Ariz. 96, 99, ¶ 12 (App. 2016).

**¶10**     In August 2017, the Children had been living together with their maternal great-grandmother for almost a year. She had been meeting their needs and wished to adopt them. DCS's case manager testified both Children had no developmental, behavioral, or special needs and were adoptable. The case manager also testified adoption would provide them with stability and long-term permanency because maternal great-grandmother intended to move to Virginia to raise the Children near extended family. The court found a specific adoption plan existed and severance was in the Children's best interests. We find no error. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶¶ 12, 14 (2016) ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely," the superior court may find that severance is in the child's best interests.).

---

[3]     Father's argument that DCS failed to place the Children together at all times is irrelevant to the court's best-interests finding, and we decline to consider it on appeal. *See State v. Hardwick*, 183 Ariz. 649, 657 (App. 1995) (once the court found grounds for resolution, it declined to reach the remaining issues). Further, because the court issued a *nunc pro tunc* order, in which it addressed an adoption plan with maternal great-grandmother, Father's second argument is moot. *See Arpaio v. Maricopa County Bd. of Supervisors*, 225 Ariz. 358, 361, ¶ 7 (App. 2010) ("A case becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties."). In its *nunc pro tunc* order, the court also specifically found an adoption plan with maternal great-grandmother existed and made related findings, contrary to Father's third argument.

**¶11**   Father argues he had a strong bond with the Children prior to dependency and regularly participated in visitations with great success. Evidence of a parent-child bond does not necessarily preclude a finding that severance would serve the child's best interests. *See Bennigno R. v. ADES*, 233 Ariz. 345, 351, ¶ 30 (App. 2013) (the termination of parental rights affirmed despite evidence of children's bond with parents). Here, the court received and considered the evidence of Father's bond with the Children. *See Dominique M.*, 240 Ariz. at 98–99, ¶ 12. We do not reweigh evidence on appeal. *See Oscar O.*, 209 Ariz. at 334, ¶ 4.

**¶12**   Father further argues the evidence did not establish that he would remain incarcerated for a substantial period of time. To the extent Father opposes the court's finding pursuant to A.R.S. § 8-533(B)(4), we do not address his argument because at least four other statutory grounds remain unchallenged and one statutory ground is sufficient to support termination. *See Crystal E.*, 241 Ariz. at 577, ¶ 5. To the extent Father asserts the court erred by considering the length of his sentence in determining the children's best interests, the "total length of time the parent is absent from the family" is determinative, and the court "must consider the many facts and circumstances specific to each case." *Jesus M.*, 203 Ariz. at 281, ¶¶ 8–9.

**¶13**   In August 2017, when the Children had already been in an out-of-home placement for almost 20 months, Father testified his earliest release from imprisonment in Virginia was October 2018. Upon returning to Arizona, Father may face serious criminal charges related to his January 2016 arrest. Dr. Thal also testified that "even if [Father] got out [of prison] tomorrow there's a number of things he'd have to . . . demonstrate" to show he can safely parent the Children. These behavioral changes can take substantial time to establish. Furthermore, Father made no efforts to continue his relationship with the Children after his incarceration.

**¶14**   Father argues the court's findings that the Children are "adoptable," that their needs are being met in placement, and "that they would gain permanency and stability through" termination and adoption are insufficient to support a best-interests determination. For support, Father relies on *Alma S. v. DCS*, 778 Ariz. Adv. Rep. 24 (App. 2017) (review granted May 8, 2018), a case decided after Father's rights to the Children

were severed.[4] In *Alma S.*, this court emphasized that adoptability and a placement's meeting of a child's needs, without more, are insufficient to establish a best-interests finding. 778 Ariz. Adv. Rep. at 32, ¶¶ 36–38. However, in that case, the parent "required little or no counseling on how to improve her parenting skills," a bond existed between the parent and her children, and if the parent's rights were severed, the children would have been split up. *Id.* at ¶ 37. Those facts are not present here. First, Dr. Thal testified Father's prospects of "parenting children in the foreseeable future were worrisome." Second, Father failed to continue his relationship with the Children while incarcerated. Finally, the Children are placed together and will, most likely, remain together once adopted by the maternal great-grandmother.

¶15     The superior court is in the best position to weigh the evidence and sufficient evidence supported the court's findings. *See Oscar O.*, 209 Ariz. at 334, ¶ 4. The superior court did not abuse its discretion by finding severance was in the Children's best interests.

---

[4]     DCS argues *Alma S.* is not yet in effect because this court has not issued a mandate in that case. This contention fails to appreciate the difference between the law of the case and a legal precedent binding on all lower courts. Generally, the lower court must follow the mandate of the higher court in the same case, a principle subordinate to the "law of the case." *Jordan v. Jordan*, 132 Ariz. 38, 40 (1982); *see also In re Marriage of Flores & Martinez*, 231 Ariz. 18, 21, ¶ 11 (App. 2012) ("The requirement for issuance of the mandate avoids the risk that the trial and appellate courts could assume jurisdiction of *the same case* simultaneously." (emphasis added)). On the other hand, a published opinion is "a written disposition of an appeal that is intended as precedent." ARCAP 28(a)(1). An opinion becomes binding precedent when it is published, not when a mandate issues. *See Francis v. Ariz. Dep't of Transp.*, 192 Ariz. 269, 271, ¶ 11 (App. 1998). Under that principle, and contrary to DCS's argument, our appellate opinion is binding precedent even if review is pending before the Arizona Supreme Court. *Id.* at ¶¶ 10–11.

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights to K.C. and A.C.



AMY M. WOOD • Clerk of the Court
FILED: AA